# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

---

VICTORIA SHAEV, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

v.

NUTRISYSTEM, INC., ROBERT F. BERNSTOCK, PAUL GUYARDO, MICHAEL J. HAGAN, TRICIA HAN, JAY HERRATTI, BEN KIRSHNER, MICHAEL D. MANGAN, BRIAN P. TIERNEY, ANDREA M. WEISS, AND DAWN M. ZIER,

    Defendants.

---

Case No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

Victoria Shaev ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff on behalf of herself and the other ordinary stockholders of Nutrisystem, Inc. ("Nutrisystem" or the "Company") against Nutrisystem and the members Nutrisystem's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Nutrisystem by Tivity Health, Inc. and its affiliate ("Tivity Health").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 7, 2019 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sweet Acquisition, Inc. ("Merger Sub"), a wholly owned subsidiary of Tivity Health, will merge with and into Nutrisystem with Nutrisystem surviving the merger as a wholly owned subsidiary of Tivity Health (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Nutrisystem common share issued and outstanding will be converted into the right to receive (1) $38.75 in cash, and (2) 0.2141 share of Tivity Health common stock valuing Nutrisystem at $47.00 per share based on the volume-weighted average price of Tivity Health's stock for the 10 days ended December 3, 2018 (the "Merger Consideration").

3. Nutrisystem and the Board failed to negotiate and obtain a collar provision to be included in the Merger Agreement, which is designed to protect Nutrisystem shareholders from dramatic changes in the buyer's stock price between the announcement of the Proposed Transaction and the time of closing. On the day the Merger Agreement was announced, Tivity Health's shares fell 32 percent from $40.61 on December 7 to $27.65 on December 10. The stock price has not recovered and closed at $25.03 on January 9, 2019.

4. Therefore, the consideration Nutrisystem stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Nutrisystem's stockholders

to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, (i) Nutrisystem's and Tivity Health's financial projections, relied upon by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Nutrisystem stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

5. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Nutrisystem's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Nutrisystem is incorporated in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of Nutrisystem common stock and has held such stock since prior to the wrongs complained of herein.

11. Individual Defendant Robert F. Bernstock ("Bernstock") has served as a member of the Board since December 2005.

12. Individual Defendant Paul Guyardo ("Guyardo") has served as a member of the Board since 2012.

13. Individual Defendant Michael J. Hagan ("Hagan") is the Company's Chairman of the Board and has been since April 2012. Hagan also served as Lead Director of the Board from February 2012 until his appointment as Chairman.

14. Individual Defendant Patricia Han ("Han") has served as a member of the Board since October 2018.

15. Individual Defendant Jay Herratti ("Herratti") has served as a member of the Board since April 2013.

16. Individual Defendant Benjamin A. Kirshner ("Kirshner") has served as a member of the Board since October 2018.

17. Individual Defendant Michael D. Mangan ("Mangan") has served as a member of the Board since July 2015.

18. Individual Defendant Brian P. Tierney ("Tierney") has served as a member of the Board since February 2003.

19. Individual Defendant Andrea Weiss ("Weiss") has served as a member of the Board since March 2013.

20. Individual Defendant Dawn M. Zier ("Zier") is the Company's President and Chief Executive ("CEO"). Zier has served as a member of the Board and CEO since November 2012.

21. Defendant Nutrisystem is incorporated in Delaware and maintains its principal offices at Fort Washington Executive Center, 600 Office Center Drive, Fort Washington, Pennsylvania 19034. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "NTRI."

22. Non-party Tivity Health is a Delaware corporation and mains its principal offices at 701 Cool Springs Blvd., Franklin, TN 37067. Tivity Health's common stock trades on the NASDAQ Stock Exchange under the symbol "TVTY."

23. Non-party Merger Sub is a Delaware corporation and is a wholly-owned subsidiary of Tivity Health, formed solely for the purposes of effectuating the Proposed Transaction.

24. The defendants identified in paragraphs 11-20 are collectively referred to as the "Individual Defendants" or the "Board."

25. The defendants identified in paragraphs 11-21 are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Nutrisystem common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

27. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of October 24, 2018, there were 29,418,118 outstanding shares of Nutrisystem common stock. The holders of these shares are believed to be geographically dispersed through the United States;

(b) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

   i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

   ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated as presently anticipated.

(c) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

6

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction Undervalues Nutrisystem**

28.     Nutrisystem is a provider of weight management products and services, including nutritionally balanced weight loss programs, multi-day kits available at retail locations and digital tools to support weight loss.

29.     On December 10, 2018, the Company and Tivity Health jointly announced the Proposed Transaction:

> NASHVILLE, Tenn. and FORT WASHINGTON, Pa., Dec. 10, 2018 /PRNewswire/ -- Tivity Health, Inc. (Nasdaq: TVTY), a leading provider of fitness and health improvement programs, and Nutrisystem, Inc. (Nasdaq: NTRI), a leading provider of weight management products and services, today announced that they have entered into a definitive agreement under which Tivity Health will acquire all of the outstanding shares of Nutrisystem for a combination of cash and stock. Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Nutrisystem shareholders will receive $38.75 per share in cash and 0.2141 Tivity Health shares for each share of Nutrisystem common stock. The transaction values Nutrisystem at an enterprise value of $1.3 billion and an equity value of $1.4 billion, or approximately $47.00 per share. The implied stock consideration of $8.25 per Nutrisystem share is based on the volume-weighted average price of Tivity Health's stock for the 10 days ended December 3, 2018. The implied transaction consideration of $47.00 per share represents a 30% premium based

on the volume-weighted average price for Nutrisystem over the last five trading days.

The combined company will be unique in offering, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness. Through this expanded portfolio, Tivity Health will be better positioned to address weight management – a major factor contributing to many chronic diseases. The diversification of Tivity Health's portfolio and increased scale will benefit all the company's stakeholders – including health plans, fitness partners, members and consumers – as these offerings support healthier lifestyles and can lower medical costs. Tens of millions of Americans are currently eligible for Tivity Health's SilverSneakers®, Prime® Fitness, WholeHealth Living™and flip50™ programs, and millions of people have lost weight with Nutrisystem's products, including Nutrisystem®, South Beach Diet® and DNA BodyBlueprint™.

This transaction will also create meaningful value for Tivity Health's shareholders through the addition of a new independent revenue stream, cost and revenue synergies, and significant potential growth opportunities. The combination of Tivity Health's and Nutrisystem's highly trusted brands and strong marketing and data analytics expertise will allow the combined company to increase awareness and member enrollment and engagement across all consumer audiences. The acquisition of Nutrisystem will further elevate Tivity Health as a leading health and wellness company offering comprehensive fitness, nutrition and social engagement solutions. Based on the financial results for both companies for the 12 months ended September 30, 2018, pro forma revenue would have been approximately $1.3 billion, net income would have been approximately $135 million and adjusted EBITDA would have been approximately $223 million. See the table appended to this release for a reconciliation of non-GAAP financial measures.

* * *

**Transaction Details**

Under the terms of the merger agreement, each outstanding share of Nutrisystem stock will be exchanged for $38.75 in cash and 0.2141 shares of Tivity Health common stock. Upon closing, Tivity Health shareholders are expected to own approximately 87% of the pro forma company on a fully diluted basis.

> Tivity Health will finance the cash portion of the acquisition with fully committed term loan financing from Credit Suisse and existing cash on hand. At the closing of the transaction, Tivity Health's pro forma net leverage is expected to be approximately 4.4x, including the benefit of identified cost synergies. Tivity Health expects to reduce net leverage to less than 3.5x by the end of 2020, and less than 2.5x by the end of 2021.
>
> The transaction is expected to close in the first quarter of 2019, subject to the approval of Nutrisystem shareholders, the receipt of regulatory approval and other customary closing conditions.

\* \* \*

30. The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, the Merger Consideration of $47 per share is more than $6 less than the Company's 52-week high of $53.30.

31. On October 30, 2018, Nutrisystem announced stellar third quarter results. The Company reported an increase of 10% in diluted income per share to $.054, as well as increases in revenue and net income.

32. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by limiting their ability to benefit from the Company's continued growth.

33. Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction without an exchange ratio collar provision, which would have protected the Company's shareholders from Tivity Health's free-fall stock price. It is therefore imperative that Nutrisystem's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

34.     On January 7, 2019, Nutrisystem and Tivity Health jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

35.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

36.     For the projections prepared by the Nutrisystem management, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 86. Adjusted EBITDA and Unlevered Free Cash Flow are non-GAAP measures as contemplated by Regulation G.

37.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-

GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

38. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

39. Thus, to cure the Registration Statement the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

40. With respect to Evercore's *Discounted Cash Flow Analyses*, the Registration Statement also fails to disclose: (i) the projected terminal values for the companies; (ii) the inputs and assumptions underlying the range of discount rates ranging from 9.5% to 10.5%, (iii) the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

inputs and assumptions underlying the perpetuity growth rates of 3.0% to 4.0% that was applied to arrive at the terminal values, and (iv) the companies' unlevered free cash flows, the line items used to calculate them, including capital expenditures, working capital, cash taxes, and non-cash employee compensation expense.

41.     With regard to Evercore's *Net Present Value of Future Stock Price Analysis* of Nutrisystem, the Registration Statement fails to disclose the projected per-share equity value as of December 31, 2021 and the inputs and assumptions underlying the range of discount rate of 10.50%.

42.     Evercore also performed a precedent premia analysis by analyzing the "premia paid in transactions with greater than 50% cash consideration (excluding mergers of equals, reverse mergers, restructurings and non-control acquisitions (since 2013 involving U.S. target companies with an enterprise value greater than $1 billion." However, the Registration Statement fails to disclose why Evercore chose and applied the reference ranges of premia of 25% to 40% to Nutrisystem's share price on December 7, 2018. Registration Statement at 83.

43.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

disclose such information to stockholders although they could have done so without extraordinary effort.

48. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

49. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Nutrisystem within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Nutrisystem, and participation in and/or awareness of the Company's operations

Case 1:19-cv-00063-MN   Document 1   Filed 01/10/19   Page 15 of 17 PageID #: 15

and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Nutrisystem, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Nutrisystem, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

15

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

B. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 10, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com